IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

| | |
|---|---|
| BRITTANEE TUPITZA et al., *on behalf of herself and all others similarly situated*, <br><br> *Plaintiffs*, <br><br> v. <br><br> TEXAS ROADHOUSE MANAGEMENT CORPORATION, <br><br> *Defendant*. | Civil Action No. 1:20-cv-2 <br><br> Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, District Judge

Pending before the Court is Plaintiffs' Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (ECF No. 11) requesting the Court to issue notice to prospective collective members of Plaintiffs' Fair Labor Standards Act ("FLSA") claim. (ECF No. 11, p. 1). Defendant has generally denied Plaintiffs' requested relief and has submitted its Response in Opposition to Plaintiffs' Motion for Court-Authorized Notice (ECF No. 43) together with an accompanying Memorandum of Law (ECF No. 44). Defendant additionally filed its Motion to Strike Notices of Consent (ECF No. 41) together with an accompanying Memorandum of Law (ECF No. 42) requesting that the Court strike the notices of consent of out-of-state opt-in Plaintiffs.

The issues are ripe for adjudication, and for the reasons set forth below, the Court will DENY Defendant's Motion to Strike Notices of Consent (ECF No. 41) and will GRANT Plaintiffs' Motion for Court-Authorized Notice pursuant to 29 U.S.C. § 219(b) (ECF No. 11).

1

I.     BACKGROUND

On January 7, 2020, Plaintiff, Brittanee Tupitza ("Tupitza"), filed this Class and Collective Action Complaint against Defendant, Texas Roadhouse Management Corp., alleging that she and others similarly situated were improperly classified as exempt employees under the FLSA, and because she and others similarly situated worked more than forty hours per week conducting non-exempt work, they are entitled to recover for unpaid overtime compensation under the FLSA. (ECF No. 1, ¶¶. 1–10). Tupitza further alleges that she and others similarly situated have a right to relief under the Pennsylvania Minimum Wage Act ("Pennsylvania Wage Laws"). (ECF No. 1, ¶ 6).

Defendant owns and operates numerous restaurants nationwide, including in Pennsylvania, and employs a substantial number of individuals in the operation of its restaurants. (ECF No. 12, p. 7). Defendant is incorporated in Kentucky and has its principal headquarters in Kentucky. (ECF No. 42, p. 9). Defendant registered to do business in Pennsylvania on September 29, 2006. (ECF No. 47-1). Relevant to the claims in this suit, Defendant employs individuals as Service Managers and Kitchen Managers. Defendant provides for the responsibilities and requirements of each

position in its job postings, and classifies individuals employed as Service Managers[1] and Kitchen Managers[2] as exempt under the FLSA. (ECF No. 44, pp. 7–8).

---

[1] The duties enumerated in Defendant's job posting for Service Managers include:

- Accountable for driving sales and guest satisfaction.
- In conjunction with all management, enforces compliance with all employment policies in area of responsibility.
- Oversees/approves all FOH systems.
- Responsible for providing or directing all FOH training.
- Inspires staff to deliver service at the pace and effectiveness to meet or exceed operational standards for legendary service and to improve sales[.]
- Ensures 100% table visitation during shifts in order to develop a deep understanding of the local customer base to develop successful sales-driving strategies and obtain real-time feedback for staff performance improvement.
- Manages liquor orders and controls liquor costs.
- Assists with the development of all (FOH and BOH) key hourly employees, assistant managers, and hourly employees.
- Reviews applications and decides which FOH applicants to be interviewed; interviews those selections and provides recommendation on hiring and/or makes hiring decisions.
- Responsible for performance management of FOH staff, in conjunction with ASM (where applicable), including performance evaluations, coaching and discipline.
- Cross-trains FOH employees and oversees their development.
- Directs work for FOH employees including setting hours and weekly schedules and assigning tasks before, during and after open hours of the restaurant[.]
- Creates a fun, safe environment by following our core values and operational goals, and implementing contests, theme nights, and creating incentives for the staff.
- With assistance of ASM (if applicable), responsible for ensuring that cleanliness of restaurant and safety of guests are maintained at all times.
- Understands, manages, and practices safe food handling procedures.
- Manages compliance with Responsible Alcohol Service training requirements.

(ECF No. 44-1, p. 8).

[2] The duties enumerated in Defendant's job posting for Kitchen Managers include:

- Supervises and oversees the production and preparation of food in a manner consistent with established recipes and procedures.
- In conjunction with all management, enforces compliance with all employment policies in area of responsibility.

3

Tupitza was formerly employed by Defendant as a Service Manager in Erie, Pennsylvania, from approximately June of 2016 to May of 2017. (ECF No. 1, ¶ 11). She alleges that she "regularly worked . . . between fifty and seventy hours per week for Defendant." (ECF No. 1, ¶ 12). She consistently engaged in non-exempt duties, including "preparing food, cleaning the restaurant, bussing tables, serving customers, processing payments, and taking orders." (ECF No.

---

- Directs productivity to monitor and maintain efficient and effective food item ticket times.
- Inspires staff to deliver service at the pace and effectiveness to meet or exceed operational standards for legendary food[.]
- Continuously coaches staff to improve food production to legendary food standard quality[.]
- Conducts formal line taste and temp checks as part of overall responsibility for inventory and safety in the BOH.
- Assists with the development of all (FOH and BOH) key hourly employees, assistant managers, and hourly employees.
- Ensures proper handling, maintenance, and storage of all items.
- Manages food and kitchen labor costs.
- Predicts and analyzes inventory data to maintains proper inventories.
- Tracks waste to ensure profitable and efficient use of all inventory.
- Directs work for BOH employees, including setting hours and weekly schedules and assigning tasks before, during and after open hours of the restaurant[.]
- Trains staff on equipment maintenance and cleaning procedures.
- Certifies security measures are enforced throughout the shift.
- Creates a safe, fun, and clean work environment for the staff in a manner consistent with our core values and operational goals.
- Understands, manages, and practices safe food handling procedures.
- With the assistance of the AKM (if applicable), responsible for ensuring that cleanliness of restaurant and safety of guests are maintained at all times.
- Develops all BOH employees, keys, and managers.
- Responsible for performance management of BOH staff, in conjunction with AKM (where applicable), which includes, but is not limited to, conducting performance evaluations, coaching and discipline.
- Reviews applications and decides which BOH applicants to be interviewed; interviews those selections and provides recommendation on hiring and/or makes hiring decisions.

(ECF No. 44-1, p. 10).

1, p. 3); ECF Nos. 13–13-6). Tupitza has, therefore, claimed that Defendant had a policy or practice of misclassifying non-exempt employees as exempt employees and requiring the same individuals to engage in non-exempt work in violation of both the FLSA and Pennsylvania Wage Laws. (ECF No. 1, p. 3). Tupitza has further averred that Defendant's policy or practice is nationwide, and that others similarly situated likely incurred the same unlawful treatment. (ECF No. 1, pp. 3–4).

Additional workers have filed their consents to join the action. They have worked at twelve of Defendant's locations, spanning seven states. Those Plaintiffs generally agree with Tupitza's assertions, and their declarations additionally provide that they lacked managerial capacity. Those individuals allege that they could not engage or decide the following: "menu items to sell, . . . promotions or sales strategies, . . . hours of operation, or . . . dress codes." (ECF No. 12, p. 9). They were not permitted to exercise discretion in conducting interviews or issuing discipline, and the input they provided was subject to final approval by the managing partner. (ECF No. 12, p. 9).

Plaintiffs filed their Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (ECF No. 11) and an accompanying Memorandum of Law (ECF No. 12). Plaintiffs request that the Court issue notice to prospective collective members of Plaintiffs' FLSA claim. (ECF No. 11, p. 1). Defendant generally denied Plaintiffs' requested relief, and alleged, *inter alia*, that Plaintiffs and others similarly situated were exempt employees under the FLSA and Pennsylvania Wage Laws. (ECF No. 22, p. 1).

## II.   ANALYSIS

Defendant argues that there are two major pitfalls in Plaintiffs' case: (1) the consenting Plaintiffs in this case are improper because the Court cannot exercise personal jurisdiction over

Defendant as to those individuals' claims; and (2) Plaintiffs have failed to show that they are similarly situated to others in the proposed collective. Defendant's jurisdictional argument will be addressed first. For the reasons set forth below, Defendant's jurisdictional argument is unpersuasive in light of established precedent and persuasive authority. As to the second issue, Plaintiffs have met their modest burden of showing that there may be others similarly situated to them. The Court will authorize notice to potential opt-in members.

    A.    **THE COURT DENIES DEFENDANT'S MOTION TO STRIKE NOTICES OF CONSENT BECAUSE THE COURT HAS PERSONAL JURISDICTION OVER CONSENTING, OPT-IN PLAINTIFFS' CLAIMS AGAINST DEFENDANT BECAUSE DEFENDANT CONSENTED TO GENERAL PERSONAL JURISDICTION IN PENNSYLVANIA COURTS BY REGISTERING TO DO BUSINESS IN THE COMMONWEALTH.**

Defendant argues that, although Plaintiffs filed four Notices of Consent to opt into the lawsuit, the Court has neither general nor specific personal jurisdiction over Defendant with respect to the claims of consenting Plaintiffs, and therefore, their notices should be stricken. (ECF No. 42, p. 1). Plaintiffs have countered that the Court has both general and specific personal jurisdiction and the consents are proper. (ECF No. 47, pp. 1–2). For the reasons that follow, the Court need not reach the parties' specific jurisdiction arguments because it has general jurisdiction over Defendant.

    1.    **Standard of Review**

Personal jurisdiction is a genus that contains two species: general jurisdiction and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 414 nn.8–9 (1984)). General jurisdiction arises from a defendant's non-forum related activities, while specific jurisdiction arises from a defendant's forum-related activities. *Hall*, 466 U.S. at 414, 414 nn.8–9.

Personal jurisdiction can be waived. Either or both species of personal jurisdiction can be pleaded under a state long-arm statute, the federal long-arm statute, or through a federal statute.

To determine whether a court may properly exercise its jurisdiction over a nonresident, the court must engage a two-step analysis. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). Specifically, there must be a statutorily provided basis under the law of the forum state exercising jurisdiction, *Walden v. Fiore*, 571 U.S. 277, 284 (2014), and the nonresident's contacts with the forum state must comply with due process of law. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Although the forum's long-arm statute may validly confer personal jurisdiction on a nonresident, that is not the end of the inquiry—the court's exercise of jurisdiction must still satisfy the constitutional limits imposed by the Due Process Clause of the Fourteenth Amendment. *Walden*, 571 U.S. at 823 (citation omitted). That is, the proponent must also show that "certain minimum contacts" exist between the nonresident and the forum so that the court's exercise of jurisdiction does "not offend 'traditional notions of fair play and substantial justice.'" *Tyrrell*, 137 S. Ct. at 1558 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

General jurisdiction over a foreign corporation exists where the foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home" in the forum state. *Tyrrell*, 137 S. Ct. at 1558 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). For that matter, jurisdiction can be established by consent, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011), and the Third Circuit has held that a foreign corporation registered to do business in Pennsylvania "has consented to the jurisdiction of Pennsylvania courts." *Sciortino v. Jarden, Inc.*, 395 F. Supp. 3d 429, 438 (E.D. Pa. 2019) (citing *Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991)).

2. **Discussion**

Defendant asserts that the Court lacks general jurisdiction over it with regard to the claims raised by the consenting Plaintiffs. (ECF No. 53, p. 11). Specifically, Defendant contends that, although it consented to general jurisdiction in Pennsylvania by way of registering to do business in Pennsylvania, its consent is invalid because Pennsylvania's registration statute permitting foreign businesses to do business in Pennsylvania is unconstitutional pursuant to the Supreme Court decision in *Daimler*. (ECF No. 53, pp. 2–11). Plaintiffs counter that Pennsylvania's foreign business registration statute validly confers general jurisdiction upon consenting businesses, and that the statute is consistent both with the Third Circuit's Opinion in *Bane* and the Supreme Court's more recent holding in *Daimler*. (ECF No. 47, pp. 2–6).

Pennsylvania's long-arm statute currently provides for general jurisdiction over, *inter alia*, foreign companies registered to do business in Pennsylvania. 42 Pa. C.S. § 5301 (a)(2)(i)–(iii). In *Bane*, the Third Circuit upheld a Pennsylvania statutory scheme that required foreign corporations to register to do business in the state, and the Court explained that Pennsylvania's statute validly "carrie[d] with it consent to be sued in Pennsylvania courts." *Bane*, 925 F.2d at 640. Defendant claims that *Bane*'s holding cannot be reconciled with *Daimler*'s general jurisdiction requirements. (ECF No. 53, pp. 6–9).

Within the Third Circuit, with the exception of one,[3] every district court to consider the constitutionality of the consent-by-registration statute has held that it validly confers general

---

[3] The case of *In re: Asbestos Products Liability Litigation (No. VI)*, 384 F. Supp. 3d 532 (E.D. Pa. 2020), is the outlier. That district court stated that "the Pa. statutory scheme presents a foreign corporation with a Hobson's choice: consent to general personal jurisdiction or be denied the benefits of doing business in Pennsylvania. To put it another way, the Pa. Statutory Scheme conditions the benefit of certain privileges of doing business in Pennsylvania upon the surrender of the constitutional right, recognized in *Daimler*, to be subject to general personal jurisdiction only where the corporation is 'at home.'" *Id.* at 541. In recognizing the validity of the unconstitutional conditions doctrine, the court stated that the "Pa. Statutory Scheme allows

personal jurisdiction upon defendants.[4] *Kraus v. Alcatel-Lucent*, 441 F. Supp. 3d 68, 74 (E.D. Pa. 2020). The Supreme Court "did not address 'the interplay between consent to jurisdiction and the due process limits of general jurisdiction.'" *Id.* at 75 (quoting *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, Civ. A. No. 16-665, 2017 WL 3129147, at *11 (E.D. Pa. Jul. 24, 2017)). Prior to the Supreme Court's decision in *Daimler*, the Court indicated as recently as 2011, that "[a] person may submit to a State's authority in a number of ways . . . . [including] explicit consent." *Nicastro*, 564 U.S. at 880.

In short, while its apparent that *Bane* was issued well before *Daimler*, and to that extent applied previous standards of general jurisdiction, *compare Bane*, 925 F.2d at 639 (quoting *Hall*, 466 U.S. at 414) (stating petitioner "must establish . . . that the defendant ha[d] 'continuous and systematic' contacts with the forum state . . . .") (internal quotation marks omitted) *with Daimler*, 571 U.S. at 139 (clarifying that the inquiry does not focus on in-forum contacts that can be said to be in some sense 'continuous and systematic,' but instead, it requires that a corporation's

---

Pennsylvania to impermissibly extract consent at a cost of the surrender of a constitutional right." *Id.* at 543. The district court went on to hold that *Bane* is irreconcilable with *Daimler*, because of *Daimler*'s "at home" standard. *Id.* at 543–45. The court therefore concluded that Pennsylvania's foreign business consent statute is unconstitutional. *Id.*

[4] *See Healthcare Servs. Grp., Inc. v. Moreta*, Civ. A. No. 19-2260, 2019 WL 6117353, at *6 (E.D. Pa. Nov. 15, 2019); *Sciortino v. Jarden, Inc.*, 395 F. Supp. 3d 429, 438 (E.D. Pa. 2019); *Williams v. Takeda Pharm. Am., Inc.*, Civ. A. No. 18-4774, 2019 WL 2615947, at *3 (E.D. Pa. June 26, 2019); *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, Civ. A. No. 18-470, 2019 WL 1440046, at *4–6 (E.D. Pa. Mar. 29, 2019); *Gorton v. Air & Liquid Sys. Corp.*, Civ. A. No. 1:17-1110, 2019 WL 757945, at *5–6 (M.D. Pa. Feb. 20, 2019); *Youse v. Johnson & Johnson*, Civ. A. No. 18-3578, 2019 WL 233884, at *3–4 (E.D. Pa. Jan. 16, 2019); *Shipman v. Aquatherm L.P.*, Civ. A. No. 17-5416, 2018 WL 6300478, at *2 (E.D. Pa. Nov. 28, 2018); *Aetna Inc. v. Mednax, Inc.*, Civ. A. No.18-2217, 2018 WL 5264310, at *4–5 (E.D. Pa. Oct. 23, 2018); *Mendoza v. Electrolux Home Prod., Inc.*, No. 4:17-CV-02028, 2018 WL 3973184, at *3–4 (M.D. Pa. Aug. 20, 2018); *Allstate Ins. Co. v. Electrolux Home Prod.*, No. 5:18-CV-00699, 2018 WL 3707377, at *4-5 (E.D. Pa. Aug. 3, 2018); *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 298 (M.D. Pa. 2018); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, Civ. A. No. 16-665, 2017 WL 3129147, at *11 (E.D. Pa. July 24, 2017); *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 655 (E.D. Pa. 2016).

"continuous and systematic" contacts render that corporation "essentially at home in the forum state."), *Daimler* simply did not address the validity of foreign business consent statutes. In the absence of Supreme Court precedent directly on point, the Court will apply Third Circuit precedent which, while older than *Daimler*, unquestionably addresses the issue in question. Therefore, because Pennsylvania's foreign business consent statute is enforceable under *Bane*, the Court holds that it has general jurisdiction over Defendant with regard to the out-of-state, consenting parties because Defendant consented to do business in the Commonwealth as part of registering to do business.

      **B.**    **THE COURT GRANTS PLAINTIFFS' MOTION FOR COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 219(B) BECAUSE PLAINTIFFS HAVE SATISFIED THEIR MODEST BURDEN OF SHOWING THAT THEY AND OTHERS MAY BE SIMILARLY SITUATED.**

Plaintiffs request that the Court authorize notice to potential opt-in members because Tupitza and consenting Plaintiffs have satisfied their burden of showing that they and others are similarly situated.[5] Specifically, Plaintiffs allege the following: (1) that Defendant has a policy of improperly classifying Kitchen Managers and Service Managers as exempt employees under the FLSA,[6] (ECF No. 12, p. 7); and (2) Kitchen Managers and Service Managers routinely engage in non-exempt activities for a majority of the time they are at work. (ECF No. 12, p. 4).

---

[5] Plaintiffs request notice in the form of mail, e-mail, text message, and a stand-alone website, with reminder notices to individuals who do not respond halfway through the notice period. (ECF No. 12, pp. 14–15). She further requests that Defendant provide "names, last known mailing addresses, last known telephone numbers, last known personal email addresses, work locations, and dates of employment at each location, for all Collective Members, and the last four digits of Social Security numbers for those members whose notices are returned undeliverable." (ECF No. 12, p. 15).

[6] Initially, Plaintiffs alleged Defendant's "uniform job postings describe the same primary job duties for all [Kitchen Managers and Service Managers] . . . . [,]" and those postings provide that Kitchen Managers and Service Managers significantly engaged in non-exempt duties (ECF No. 12, p. 3). Plaintiffs specifically claim that within Defendant's job requirements are two express, non-exempt duties: "preparing and presenting all food products" and "practicing safe food

Defendant, however, disagrees with Plaintiffs' contentions. It asserts that because it does not have a formal policy subjecting Kitchen and Service Managers to non-exempt work, Plaintiffs have failed to show that there was a common practice by Defendant evidencing the same. (ECF No. 44, pp. 11–16). Defendant contends that when the contents of an employer's formal policies are not challenged outside of a general exemption policy, a general exemption policy is not enough to establish that others are similarly situated,[7] and that in such a circumstance, Plaintiffs have failed to show a *de facto* practice or policy[8] of Defendant subjecting Kitchen and Service Managers to

---

handling procedures." (ECF No. 12, p. 3). Defendant, however, strongly disagrees with Plaintiffs' contentions. It asserts that Plaintiffs have misconstrued and taken out of context the uniform job requirements of Kitchen Managers and Service Managers. (ECF No. 44, pp. 7–10). Defendant correctly points out that Plaintiffs have misconstrued Defendant's formal job requirements for Service and Kitchen Managers. With regard to the preparation of food, Plaintiffs' focus on the preparation and presentation of food fails to sufficiently consider the qualifying phrase immediately preceding the clause: "[a]s a Kitchen Manager, you would oversee all Back of House operations and be responsible for purchasing receiving, preparing, and presenting all food products in a timely manner, according to established recipes, and procedures." (ECF No. 13-1, p. 7). While Plaintiffs and others similarly situated may have spent a substantial period of time specifically preparing and presenting foods (two non-exempt duties), it cannot be said that the same was a non-exempt, formally provided job policy in light of the entirety of the complete requirement above. The same applies with equal force to Defendant's food handling procedures because, read in its entirety, the requirement provides for "understanding, managing, and practicing safe food handling procedures." (ECF No. 13-1, p. 7). Accordingly, Plaintiffs fail to read the above requirements in the context provided, and in that light, these requirements are managerial in nature.

[7] Defendant first contends that Plaintiffs' argument, in which they aver that Defendant does have a uniform, national policy improperly exempting Kitchen and Service Managers from overtime pay, is insufficient to establish a formal policy. (ECF No. 44, p. 6). Defendant thereafter cites to several non-controlling cases that have held that an exemption policy alone is insufficient. (ECF No. 44, pp. 6–7). The Court is not bound by the decisions of the cases cited by Defendant, and additionally, Plaintiffs have met their modest burden of showing that, in addition to Defendant's misclassification policy, Plaintiffs and others were often engaged in non-exempt work.

[8] In support of Defendant's position, it cites to a district court case from the Southern District of New York, in which the court required the plaintiffs to show that they were "similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description[,]" because plaintiffs were not challenging a formal policy. *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 476 (S.D.N.Y. 2010). Defendant additionally cites to a case from the Eastern District of Pennsylvania, in which the plaintiffs argued "that they are similarly situated to [other managers] nationwide because . . . they were uniformly

11

non-exempt work.[9] (ECF No. 44, p. 11). Additionally, Defendant attempts to factually dispute Plaintiffs' evidence of a common policy. (ECF No. 44, pp. 16–23).

---

classified as exempt from the FLSA's overtime pay requirements, were tasked with similar responsibilities, underwent similar training and were subject to standardized salary evaluation policies." *Bramble v. Wal-Mart Stores, Inc.*, No. 09-4932, 2011 WL 1389510, at *5 (E.D. Pa. Apr. 12, 2011). The district court found that such a blanket exemption policy was insufficient, and that, outside of the insufficient exemption policy, the plaintiffs were "arguing that as a matter of fact, rather than of formal job description, they are performing non-[exempt] duties for the majority of their working hours." *Id.* (quoting *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004)).

What *Bramble* and *Guillen* essentially posit is that without evidence of a formal, written policy, the plaintiffs in these types of cases are required to go beyond their "modest factual burden," and present substantial evidence, whether by affidavit, testimony, deposition or declaration, that there are in fact others similarly situated in the specified geographic area. Imposing such a burden on the plaintiffs in these cases would require these individuals to conduct substantial discovery in an effort to find similarly situated individuals, and to that extent, such a requirement would have the effect of neutralizing § 216(b)'s notice provision because the plaintiffs will have already completed most of the legwork. An inquiry into the factual relatedness of the noticed and consenting plaintiffs is best left for the second step of the FLSA collective process, wherein a court may properly weigh the evidence presented by the parties to analyze whether the parties are, by a preponderance of the evidence, indeed actually similarly situated.

Lastly, Defendant cites a case from this district, in which the court stated that "courts have readily exercised discretion and denied conditional certification motions when plaintiffs have relied on a common exemption status as the factor that binds a putative class together." *Moore v. PNC Bank, N.A.*, 2013 WL 2338251, at *5 (W.D. Pa. May 29, 2013) (citations omitted). Regardless of *Moore*'s statement, that case is substantially distinguished from the case at hand. Specifically, the plaintiff in *Moore* "neither filed any supporting declarations nor included deposition testimony of any current or former ABMs to bolster her claim[,]" whereas here, Plaintiffs have provided, in addition to Defendant's exemption policy and uniform job postings, five declarations of employees from seven states, each averring that they were required to perform non-exempt work.

[9] Defendant relies on its argument, in which it claims that the Court lacks personal jurisdiction over Defendant with regard to the out-of-state opt-in parties in this case, to assert that the declarations of those individuals should not be considered in determining whether Plaintiffs have satisfied their modest burden of showing that they and others are similarly situated. (ECF No. 44, pp. 11–12). As set forth above, the Court has general jurisdiction over Defendant by way of Defendant's consent to do business in Pennsylvania, and therefore, the Court may validly consider the declarations of the out-of-state individuals.

1. **Standard of Review**

The FLSA "was designed 'to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.'" *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *overruled on other grounds by Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013). "Under the 'collective action' mechanism set forth in . . . § 216(b), an employee alleging an FLSA violation may bring an action on 'behalf of h[er]self . . . and other employees similarly situated,' subject to the requirement that 'no employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party . . . .'" *Id.*

Courts follow a two-tiered analysis in determining whether a case may move forward as a collective action. *Id.* A plaintiff's burden at the first step is light and can be met by producing "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 195. "Generally, plaintiffs meet the standard by producing some evidence indicating common facts among parties' claims and/or a common policy affecting all the collective members." *Meals v. Keane Frac GP LLC*, No. 16-1674, 2017 WL 2445199, at *3 (W.D. Pa. Jun. 6, 2017). "Although declarations are not required, 'the presence of such affidavits would bolster a motion for conditional certification and the absence of such affidavits weakens a case.'" *Moore v. PNC Bank, N.A.*, No 12-1135, 2013 WL 2338251, at *6 (W.D. Pa. May 29, 2013) (quoting *Hall v. Guardsmark, LLC*, No. 11-213, 2012 WL 3580086, at *9 (W.D. Pa. Aug. 17, 2012)). If the plaintiff can satisfy her initial burden, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). It is worth

noting, however, that "conditional certification" of the collective action is merely a term of art, because it "is neither necessary nor sufficient for the existence of a representative action under the FLSA." *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). "Conditional certification" is quite simply the exercise of the district court's power to facilitate notice to prospective opt-ins. *Id.* "Given the 'modest burden' at the first stage of the proceedings, 'motions for conditional certification are generally successful.'" *Rood v. R&R Express, Inc.*, No. 17-1223, 2019 WL 5422945, at *2 (W.D. Pa. Oct. 23, 2019) (quoting *Waltz v. Aveda Transp. & Energy Servs., Inc.*, No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016)).

The second step of the FLSA collective action process is more demanding. Specifically, at the second stage, "with the benefit of discovery," the district court "makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff." *Camesi*, 729 F.3d at 243. The second stage of the litigation is typically initiated by the filing of a motion for final certification, motion for decertification, or both. *Id.* In determining whether individuals are in fact similarly situated at the second stage of the litigation, the district court must consider three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 10-948, 2011 WL 6372852, at *2 (W.D. Pa. Dec. 20, 2011). "This second stage is less lenient, and the plaintiff bears a heavier burden." *Symczyk*, 656 F.3d at 193.

To summarize, "the first stage looks at 'whether "similarly situated" plaintiffs do, in fact exist, while at the second stage the [Court] determines whether the plaintiffs who have opted in are, in fact, "similarly situated" to the named plaintiffs.'" *Dunkel v. Warrior Energy Services, Inc.*, 304 F.R.D. 193, 199 (W.D. Pa. 2014) (quoting *Zavala*, 691 F.3d at 536 n.4).

2. **Discussion**

Plaintiffs have satisfied their modest burden of showing that they and others are similarly situated for purposes of the first step in the FLSA collective action process. Plaintiffs provided declarations from five individuals, all of whom have been employed throughout twelve locations in seven different states. *See (*ECF No. 13-2, p. 1) (Erie, Pennsylvania); (ECF No. 13-3, p. 4) (Albany, New York); (ECF No. 13-4, p. 1) (Florence, Alabama; Pelham, Alabama); (ECF No. 13-5, p. 5) (Palm Bay, Florida; Ft. Myers, Florida; Phoenix, Arizona; Flagstaff, Arizona; Naples, Florida; South Port Indianapolis, Indiana); (ECF No. 13-6, p. 3) (Syracuse, New York; Horseheads, New York). Within these declarations, each individual has provided that he or she primarily performed non-exempt duties, including customer service and manual labor, cooking and preparing food, taking orders, serving customers, cleaning, processing customer payments, expediting, and performing general customer service duties. Plaintiffs furthermore provided that they each have identical job titles and job descriptions, and routinely worked in excess of forty hours per week. Plaintiffs provided that a common, nationwide policy is in place, in which Kitchen Managers and Service Managers are classified as exempt employees. Accordingly, in light of Plaintiffs' evidentiary display, they have met their modest burden of showing that they and others may be similarly situated.

The remaining issue to be addressed is the method and form of Plaintiffs' proposed notice to other prospective FLSA members. "The Supreme Court has held that district courts have broad discretion under FLSA to facilitate notice to potential collective action plaintiffs." *Dunkel*, 304 F.R.D. at 203 (quoting *Bath v. Red Vision Sys., Inc.*, No. 13-02366, 2014 WL 2436100, at *7 (D.N.J. May 29, 2014)) (internal quotation marks omitted). "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Id.*

(quoting *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989)) (internal quotation marks omitted). "District courts may properly oversee [the notice] process in a management role." *Rood*, 2019 WL 5422945, at *4 (quoting *Hively v. Allis-Chalmers Energy, Inc.*, No.13-106, 2013 WL 5936418, at *7 (W.D. Pa. Nov. 5, 2013)) (internal quotation marks omitted). "[D]isputes about the form and content of any notice are best resolved by the parties." *Id.* *See also Meals*, 2017 WL 2445199, at *5 (ordering parties to meet and confer to finalize content and form of notice and to thereafter submit joint proposal for consideration).

The Court orders the parties to meet and confer in an effort to finalize the method and form of notice to potential FLSA collective members. *See Ivanovs v. Bayada Home Health Care, Inc.*, No. 17-1742, 2018 WL 4583510, at *4 (D.N.J. Sep. 25, 2018) (requiring plaintiffs and defendant to meet and confer, and propose joint notice proposal where plaintiffs requested multiple forms of notice and defendant opposed "practically all of [their] proposals."). The parties should discuss the form and method of notice to prospective collective members and submit a joint proposal to the Court within thirty days. The Court strongly encourages the parties to come to an agreement on the proposed form and method of notice to the collective. *See id.* (citations omitted) (stating that the defendant "was obligated to participate in [the] process[,]" . . . . and the plaintiff "has an obligation not to demand the moon when the stars are sufficient."). Should the parties fail to come to an agreement, they are permitted to file a motion with the Court to resolve the remaining notice disputes. *See Rood*, 2019 WL 5422945, at *4.

### III.   CONCLUSION

For the reasons explained above, the Court denies Defendant's Motion to Strike Notices of Consent because the Court has personal jurisdiction over the consenting Plaintiffs' claims against Defendant because Defendant consented to general personal jurisdiction by registering to do

business in Pennsylvania. The Court grants Plaintiffs' Motion for Court-Authorized Notice pursuant to 29 U.S.C. § 219(b) because Plaintiffs have satisfied their modest burden of showing that they and others may be similarly situated. An Order of Court will follow. That Order will require the parties to meet and confer to discuss the form and method of notice to the prospective collective, with any disputes encountered therewith to be dealt with upon a motion to the Court.

BY THE COURT:

_/s/ William S. Stickman IV_
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE